Sherry M. LOWREY, individually, et al., Minors, by and through their Mother and Next Friend, Sherry M. Lowrey, Appellants,

v.

Carolyn J. HORVATH, individually, and The Estate of Charles O. Horvath, Carolyn J. Horvath, Administratrix, Respondents.

No. 66277.

Supreme Court of Missouri, En Banc.

April 30, 1985.

Rehearing Denied May 29, 1985.

Kirk R. Presley, Bart L. Strother, Kansas City, Lawrence V. Fisher, Plattsburg, for appellants.

Mary Knaus LeCluyse, George T. O'Laughlin, Kansas City, for respondents.

DONNELLY, Judge.

Sherry Lowrey and her three minor children, Roxanna Lowrey, Dallas Lowrey and Robert Lowrey, instituted this action against Carolyn Horvath and the estate of Charles Horvath to recover damages for the wrongful death of their husband and father, Bobby Lowrey, and to recover damages for personal injuries sustained by Sherry Lowrey. An appeal was taken from an order of the trial court sustaining

defendants' motion to dismiss Count I of plaintiffs' petition. Count I set forth the averments pertaining to the wrongful death claim. The Western District of the Court of Appeals reversed the judgment of dismissal of the trial court and remanded the case for trial upon the merits. Upon a belief that its holding conflicted with the holding of the Eastern District of the Court of Appeals in *Betz v. Glaser*, 375 S.W.2d 611 (Mo.App.1964) and for the purpose of reexamination of existing law, the court of appeals, on its own motion, transferred this case to the Supreme Court. Rule 83.02. This case will now be determined as though the original appeal had been brought directly to this Court. Mo. Const. art. V, § 10.

■ In reviewing the trial court's dismissal of plaintiffs' petition for failure to state a claim upon which relief can be granted, the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to plaintiffs, the averments invoke principles of substantive law entitling plaintiffs to relief. *Shapiro v. Columbia Union National Bank and Trust Co.*, 576 S.W.2d 310, 312 (Mo. banc 1978). The averments in Count I of plaintiffs' petition include the following facts: that Sherry Lowrey was the lawful wife and is now the widow of Bobby Lowrey and that Robert Lowrey, Roxanna Lowrey, and Dallas Lowrey are the minor children of Bobby Lowrey whose wrongful death is the subject matter of this action; that Carolyn Horvath is the widow of Charles Horvath, and the administratrix of his estate; that Bobby Lowrey, at the request of Carolyn Horvath, entered a well located on property owned jointly by Carolyn and Charles Horvath in order to render assistance to Charles Horvath who had previously entered the well for the purpose of cleaning and repairing it; that Carolyn Horvath requested Bobby Lowrey's help in the belief that her husband may have been injured or ill; that Bobby Lowrey, after receiving Carolyn Horvath's request for help, attempted to render assistance to Charles

Horvath inside of the well and thereafter collapsed and died as a result of asphyxiation; that Carolyn and Charles Horvath were negligent in the manner in which they undertook to clean and repair the well in that Carolyn and/or Charles Horvath placed a gasoline powered pump in or immediately above the well and Carolyn and Charles Horvath knew or in the exercise of ordinary care should have known that locating the pump in such a position created a grave risk of death or serious physical injury to those entering the well; and that as a direct and proximate result of the negligence of Carolyn and Charles Horvath and the death of Bobby Lowrey, plaintiffs have sustained damages.

Relying on *Betz v. Glaser*, 375 S.W.2d 611 (Mo.App.1964), defendants argue that the trial court properly dismissed Count I for failure to state a claim upon which relief can be granted because the petition fails to reveal how defendants violated any duty of care owed to Bobby Lowrey. Plaintiffs, on the other hand, contend that under the "rescue doctrine" the petition sufficiently charges defendant-decedent Charles Horvath with negligence in placing himself in a perilous situation that was likely to invite a rescue attempt by others.

■ A variant of what is now referred to as the "rescue doctrine" was recognized by this Court for the first time in *Donahoe v. The Wabash, St. Louis and Pacific Railway Co.*, 83 Mo. 560 (1884). Under the rule which has developed, a person who is injured in the course of undertaking a rescue may recover from the person whose negligence created the peril necessitating the rescue so long as the rescuer's conduct is not rash or reckless. *Welch v. Hesston Corp.*, 540 S.W.2d 127, 129 (Mo.App.1976); *National Dairy Products Corp. v. Freschi*, 393 S.W.2d 48, 49, 57 (Mo.App.1965). *See generally*, W. Prosser & P. Keeton, The Law of Torts § 44, at 307–08 (5th ed. 1984); Restatement (Second) of Torts §§ 445 Comment d, 472 (1965). The rescue doctrine offers two important benefits to the person who is attempting to recover for

injuries incurred during a rescue attempt. First, under the rescue doctrine it is not negligence to knowingly and voluntarily place one's self in a position where the likelihood of receiving serious physical injury is great when the exposure to such danger is conducted in a reasonable manner and for the purpose of saving human life. *McConnell v. Pic-Walsh Freight Co.,* 432 S.W.2d 292 (Mo.1968); *Hammonds v. Haven,* 280 S.W.2d 814 (Mo.1955). Second, the plaintiff may invoke the rescue doctrine to establish "that the defendant's negligence in creating the peril which induced the injured person to attempt to rescue another who was imperiled was the proximate cause of the injury for which recovery is sought * * *." 57 Am.Jur.2d *Negligence* § 418 (1971). *See, e.g., Stone's Independent Oil Distributors v. Bailey,* 122 Ga.App. 294, 176 S.E.2d 613 (Ga.Ct.App. 1970).

The rescue cases which have heretofore been considered by this Court have involved situations in which the plaintiff sought recovery from a defendant whose negligent conduct placed a "third party" in a position of peril that invited the plaintiff to attempt a rescue. *See, e.g., McConnell,* 432 S.W.2d 292 (Mo.1968); *Dulley v. Berkley,* 304 S.W.2d 878 (Mo.1957). The case at bar presents to this Court for the first time the question whether a person injured during a reasonable attempt to rescue another may recover from the person who was the target of the rescue when that person was guilty of negligently imperiling himself. *See generally,* 65A C.J.S. Negligence § 124 (1966). This question was addressed by the Eastern District of the Court of Appeals in *Betz.* Defendant relies on *Betz* for the proposition that a person has no legal duty to avoid placing himself in a position of peril that is likely to invite rescue.

In *Betz,* the plaintiff was standing on a ladder trimming branches from a tree when the defendant negligently wandered beneath the portions of the tree being trimmed. 375 S.W.2d at 612. Apparently the plaintiff saw the defendant in danger of being struck by a falling limb and, in the process of attempting to "rescue" the de-

fendant by grabbing the limb, lost his balance and fell from the ladder. *Id.* The plaintiff sustained serious injury by reason of the fall. *Id.* In affirming the judgment of the trial court granting the defendant's motion for judgment notwithstanding the verdict, the court of appeals concluded that it was not possible to charge the defendant with negligence under the circumstances because the defendant could not have reasonably foreseen that in walking under a tree which the plaintiff was trimming he was in any way endangering the plaintiff. *Id.* at 613–14.

■ Our general rules governing negligence liability do not support the conclusion reached in *Betz,* and do not support the contention made by defendants in their brief that, "defendant-decedent Charles Horvath * * * owed no duty of care to the chance rescuer since the only risk that could be anticipated was to himself." As a general proposition, a duty of care which is imposed by the law of negligence arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury. *Gold v. Heath,* 392 S.W.2d 298, 303 (Mo.1965); *Green v. Kahn,* 391 S.W.2d 269, 275 (Mo. 1965). Nevertheless, the determination of foreseeability "does not depend alone upon whether, in the exercise of reasonable diligence, a defendant could foresee or ought to have foreseen, the very injury complained of, but the party charged with negligence may be held liable for any injury which, after the casualty, appears to have been a natural and probable consequence of his act or omission." *Boyd v. Terminal Railroad Association of St. Louis,* 289 S.W.2d 33, 37 (Mo.1956). *See Tharp v. Monsees,* 327 S.W.2d 889, 894 (Mo. banc 1959); *Dodson v. Maddox,* 359 Mo. 742, 751–52, 223 S.W.2d 434, 439 (1949).

■ Recovery under the rescue doctrine is based upon the theory that danger invites rescue and therefore "the negligence or wrong that imperils life is not only a wrong to the imperiled victim but is also a wrong (negligence) to his rescuer." *Dul-*

*ley,* 304 S.W.2d at 883. For this reason, persons who have negligently forced some "third party" into a situation inviting the plaintiff's rescue have been held liable for the plaintiff's injury even though they might not have contemplated that someone would attempt to extricate the third party from danger. In the oft repeated words of Judge Cardozo, although the wrongdoer "may not have foreseen the coming of a deliverer [h]e is accountable as if he had." *Wagner v. International Ry. Co.,* 232 N.Y. 176, 180, 133 N.E. 437, 438 (1921).

There is no logical basis for distinguishing between the situation in which recovery is sought against a defendant whose negligence imperiled some third party, and the situation in which recovery is sought against a defendant who negligently imperiled himself. A person with reasonable foresight who negligently imperils another or who negligently imperils himself will normally contemplate the probability of an attempted rescue, in the course of which the rescuer may sustain injury. Under the rescue doctrine, "the right of action depends * * * upon the wrongfulness of the defendant's conduct in its tendency * * * to cause the rescuer to take the risk involved in the attempted rescue. And * * * a person who carelessly exposes himself to danger or who attempts to take his life in a place where others may be expected to be, does commit a wrongful act towards them in that it exposes them to a recognizable risk of injury." F. Bohlen, Studies in the Law of Torts, 569 n. 33 (1926).

We conclude that given the natural reactions and conduct to be expected of ordinary people in a life-threatening situation, there is a probability of injury sufficiently serious that a reasonable person will take precautions to avoid placing himself in a position of peril that is likely to invite rescue. *See Dodson,* 223 S.W.2d at 439. *See generally,* Annot. 4 ALR3d 558 (1965); 57 Am.Jur.2d Negligence § 424 (1971). Insofar as *Betz* is inconsistent with this opinion, it is expressly overruled.

For the reasons stated in this opinion, the averments of plaintiffs' petition do not conclusively demonstrate that substantive principles of law applied to the facts which may develop will not entitle plaintiffs to the relief prayed. The judgment dismissing Count I of plaintiffs' petition is reversed and the case is remanded for a trial upon the merits.

All concur.