Michael GRIFFIN, Personal Representative, Estate of Paul Griffin, Deceased, Respondent,

v.

R. Leroy MILLER, Personal Representative, Estate of Helen Ervin, Deceased, Appellant.

No. WD 49721.

Missouri Court of Appeals,
Western District.

June 13, 1995.

Christopher P. Raynes, Trenton, for appellant.

John L. Young, Princeton, for respondent.

Before FENNER, C.J., and BRECKENRIDGE and SPINDEN, JJ.

FENNER, Chief Judge.

Appellant, R. Leroy Miller, personal representative of the estate of Helen Ervin, appeals the trial court's denial of his post-trial motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial. Appellant contends the post-trial motion should not have been denied because the trial court lacked jurisdiction to adjudicate the matter due to an untimely and improper substitution of plaintiffs and because the verdict reached by the jury was against the weight of the evidence.

As best this court can determine from the record presented by the parties, this dispute arose from the claim of respondent's decedent, Paul Griffin, to the proceeds of a bank account that was listed in the names of "Helen Ervin or Paul Griffin." Helen Ervin was Paul Griffin's aunt. It is undisputed that sometime prior to February 8, 1992, Helen Ervin received a check in the amount of $20,600.00 from Edward D. Jones & Co. Ms. Ervin entered the hospital on February 9, 1992, and gave the check to Jean Ann Probst. There was testimony that Ms. Ervin asked Ms. Probst to deposit the check for her and that Ms. Ervin had only one account, that being the account in question here. This testimony was disputed, but there was no dispute but that Ms. Ervin deposited the check in the account in question. Prior to this deposit, the account had a balance of approximately $4,900.

Helen Ervin died on February 19, 1992. Appellant, as her personal representative, withdrew the balance of the bank account in question. Paul Griffin also claimed entitlement to the proceeds in the bank account and filed a Petition for Discovery of Assets and for Declaration of Assets on June 2, 1992. The petition alleged the bank account in question was held in joint tenancy with a right of survivorship between Paul Griffin and Helen Ervin.

During the pendency of this action, Paul Griffin died on February 23, 1993. On March 11, 1993, counsel for Paul Griffin filed a Motion for Substitution of Plaintiff suggesting that Paul Griffin died on February 23, 1993, and requesting that his spouse and two sons, as his heirs, be substituted as plaintiff. While this motion was pending, Helen Griffin, Paul Griffin's wife, also died. A second Motion for Substitution of Plaintiff suggesting the death of Paul Griffin and Helen Griffin listing their children as their only heirs was filed July 22, 1993. The motion requested substitution of Billy Joe and Michael Lee Griffin, or in the alternative, the Estate of Paul Griffin, as plaintiff(s) pursuant to Missouri Rule of Civil Procedure 52.13.

The trial court determined that the Estate of Paul Griffin was the holder of Paul Griffin's claim to the bank account funds after his death and granted the heirs 10 days leave so that an estate could be opened for Paul Griffin and a personal representative named for substitution as plaintiff in the instant case. The estate was opened with Michael Griffin named as personal representative. The case proceeded to trial in May 1994, with a jury returning a judgment against appellants for $20,600.00 plus interest. Appellant's post-trial motions are the subject of this appeal.

## I. *STANDARD OF REVIEW*

In reviewing a ruling on a motion for judgment not withstanding the verdict, the evidence is viewed in the light most favorable to the verdict. *Duren v. Kunkel,* 814 S.W.2d 935, 936 (Mo. banc 1991); *Garrett v. Overland Garage & Parts, Inc.,* 882 S.W.2d 188, 190 (Mo.App.1994). The prevailing party is entitled to the benefit of all reasonable inferences favorable to the verdict, and any evidence unfavorable to the verdict is disregarded. *Id.*

## II. *SUBSTITUTION OF PARTIES*

### A. **Were the Motions to Substitute Brought by Parties Entitled to do so Pursuant to Rule 52.13?**

Missouri Rule of Civil Procedure 52.13(a)(1) provides the procedure for substitution upon the death of a party:

If a party dies and the claim is not thereby extinguished, the court may, upon motion, order substitution of the proper parties. Suggestion of death may be made by any party or person in interest by the service of a statement of the fact of the death as provided herein for the service of a motion. *A motion for substitution may be made by any party or by the successor or representative of the deceased party.* Such motion, together with notice of hearing shall be served upon the parties as provided in Rule 43.01, and upon persons not parties in the manner provided for service of a summons. *Unless a motion for substitution is served within 90 days after a suggestion of death is filed, the action shall be dismissed as to the deceased party without prejudice.* (emphasis added).

Appellant contends that Rule 52.13(a)(1) was not complied with by respondents and that the trial court erred in substituting Michael Griffin, Personal Representative of the Estate of Paul Griffin, as plaintiff in this action. As a result of this alleged error, appellant claims the trial court lacked jurisdiction to try the case.

Appellant first contends that a proper request for substitution was not made by respondent. Appellant claims that the motions for substitution filed by respondent counsel did not comply with Rule 52.13 because they did not indicate who he was representing at the time. Further, because an estate had not been opened for Paul Griffin at the time the motions were filed, appellant urges that the motions could not have been filed on behalf of a personal representative of the estate. Finally, appellant claims that neither motion for substitution can be construed to have been filed on behalf of anyone who was the legal successor to Paul Griffin's claim to the bank account. These arguments are without merit.

The motions for substitution filed by respondent counsel clearly indicate that they were not filed in continuation of his representation of Paul Griffin. Paul Griffin's death terminated the attorney-client relationship between counsel and Paul Griffin. *See State ex rel. Upjohn Co. v. Belt,* 844 S.W.2d 467

(Mo.App.1992). The first motion for substitution clearly states that "the heirs of Paul Griffin," listed in the motion as Helen Griffin, decedent's spouse, and Billy Joe Griffin and Michael Lee Griffin, decedent's sons, were moving for substitution of themselves as party plaintiffs. The second motion for substitution clearly states that "the heirs of Paul Griffin and Helen Griffin," listed in the motion as their sons, Billy Joe Griffin and Michael Lee Griffin, were bringing the motion for substitution of themselves as party plaintiffs, or in the alternative, substitution of the Estate of Paul Griffin (though an estate had not been opened). Any reasonable interpretation of this language demands the conclusion that the parties bringing the motion were Paul Griffin's heirs and that they were sufficiently identified in the motion. The remaining issue, however, is whether Paul Griffin's heirs were entitled to bring the motion under Rule 52.13(a)(1).

Appellant is correct in stating the obvious conclusion that because no estate had been opened for Paul Griffin at the time the motions for substitution were filed, they cannot be considered filed on behalf of a personal representative of the estate. However, Rule 52.13(a)(1) states that a motion for substitution may be made by "any party *or* by the successor *or* representative of the deceased party." Therefore, this court must examine whether Paul Griffin's heirs were his "successors" for the purposes of this litigation.

The record indicates that Paul Griffin died intestate. If a joint tenancy with right of survivorship was created in the bank account in question, Paul Griffin's survivorship interest would pass to his intestate estate due to the absence of the naming of any subsequent beneficiary in the bank account documents. Therefore, the successor to any interest Paul Griffin had in the bank account is his intestate estate, the beneficiaries of which are his intestate heirs. Immediately after Paul Griffin's death, his intestate heirs were his surviving spouse, Helen, his sons, Billy Joe and Michael Lee Griffin, and the descendants of a predeceased child whose names we have not been provided, if there are any such descen-

dants.[1] Helen Griffin's heirs at the time of her death intestate are her sons, Billy Joe and Michael Lee Griffin, and any descendants of the aforementioned predeceased child. The beneficiaries of the intestate estate of Paul Griffin can be considered "successors" to his interest in the bank account in question. Therefore, both motions for substitution were brought by Paul Griffin's "successors" as required by Rule 52.13(a)(1).

## B. Were the Motions for Substitution Timely?

Appellant next contends that the motions for substitution were not timely pursuant to Rule 52.13(a)(1). The rule provides that a motion for substitution must be served within 90 days of the suggestion of death. The initial motion for substitution and suggestion of the death of Paul Griffin were filed as one document. There is no statutory provision barring the combination of the suggestion and motion for substitution, and appellant does not question such action in his brief. Appellant claims the initial motion for substitution filed March 11, 1993 was untimely because the hearing on this motion (and the second motion for substitution) was not noticed until December 8, 1993, and not held until January 4, 1994, well in excess of the 90 day limitation period provided by Rule 52.13(a)(1).

■ Appellant errs in his interpretation of the 90 day limitation period in Rule 52.13(a)(1). The plain language of the rule requires only that a motion for substitution be served within 90 days of the suggestion of death. There is no such requirement with regard to notice of hearing or the actual hearing. The rule simply provides that the motion and notice of hearing on the motion shall be served on all parties in accordance with the rules of serving pleadings and other papers. Further, to read a 90 day requirement for notice and hearing into the rule is impractical in this day of last minute filings and crowded court dockets. The 90 day period may often be nearly exhausted before a motion for substitution is filed, leaving little or no time for the scheduling and hearing of a motion. Appellant's argument in this regard is without merit.

■ Appellant also contends that the second motion for substitution, filed July 22, 1993, was not timely because it was served more than 90 days after the suggestion of Paul Griffin's death contained in the initial motion for substitution. In analyzing this question, one must evaluate the purpose of the second motion. Based on the reasoning set forth in preceding paragraphs, the initial motion for substitution satisfied the requirements of Rule 52.13. The second motion became necessary only when Helen Griffin, the spouse and one of the successors and heirs of Paul Griffin, died. Upon her death, the facts as set forth in the initial motion were inaccurate. In essence, the second motion sought to amend the initial motion which was pending before the court. In no way does the second motion attempt to add additional causes of action or change the substance of the claim against appellant.

This situation is analogous to that where an amended petition is filed to substitute a proper plaintiff. In such situations, it is clear that if a suit is brought by one who has a beneficial interest in the subject matter, the substitution of a proper plaintiff will relate back to the time of filing of the original action, and the intervening running of the statute of limitations will not be held to bar the action by the substituted plaintiff. *Estate of Jones v. Planters Grain & Seed Co.*, 723 S.W.2d 91, 92 n. 3 (Mo.App.1987); *see*

---

1. Section 474.010, RSMo 1993 Supp., provides:
   All property as to which any decedent dies intestate shall descend and be distributed, subject to the payment of claims, as follows:
   (1) The surviving spouse shall receive:
   . . . . . . .
    (c) The first twenty thousand dollars in value of the estate, plus one-half of the balance of the intestate estate, if there are surviving issue, all of whom are issue of the surviving spouse;
   . . . .

(2) The part not distributable to the surviving spouse, or the entire intestate property, if there is no surviving spouse, shall descend and be distributed as follows:
    (a) To his children, or their descendants, in equal parts;
   . . . .

Based on the information in the record, it does not appear that Paul Griffin was survived by either of his parents.

also *St. Paul Fire & Mar. Ins. Co. v. Continental Bldg. Operating Co.,* 137 F.Supp. 493, 494 (Mo.1956). The filing of the second motion for substitution relates back to the timely filed initial motion where it seeks merely to substitute the proper plaintiff. Therefore, the second motion for substitution was timely filed. Appellant's argument to the contrary is not persuasive.

### C. Did the Trial Court Err in Granting Leave to Open the Estate of Paul Griffin in order to Substitute the Proper Plaintiff?

■ Finally, though it is unclear from the briefs presented to the court, it appears that appellant contends that the trial court erred in granting leave to respondents to open the estate of Paul Griffin, allowing substitution of Michael Griffin as the Personal Representative of the Estate of Paul Griffin as plaintiff. The motion was properly before the court as the motioning parties were granted standing to bring the motion as "successors" to the interest of Paul Griffin pursuant to Rule 52.13(a)(1) as discussed earlier. Additionally, the second motion for substitution requests as an alternative the substitution of the Estate of Paul Griffin as plaintiff. In ruling on the motion, the trial court determined that Paul Griffin's claim passed to his intestate estate and that the personal representative of his estate was the proper party to be substituted as plaintiff. Paul Griffin's heirs, however, had failed to open an estate after his death. Therefore, the court granted leave to open the estate.

■ The trial court granted leave to amend the pleadings so that substitution of the proper plaintiff could be achieved. Opening of the estate was necessary to identify the personal representative, the proper party to substitute as plaintiff. Leave to amend pleadings shall be freely granted when justice so requires. Rule 55.33; *Western Casualty & Sur. Co. v. Kansas City Bank & Trust Co.,* 743 S.W.2d 578, 582 (Mo.App.1988). Further, the matter of amendment of pleadings is within the discretion of the trial court. *Boling v. State Farm Mut. Auto. Ins. Co.,* 466 S.W.2d 696, 699 (Mo.1971). Factors that should be considered in deciding whether to allow an amendment are hardship to the moving party if leave to amend is not granted, the reasons for failure to include any new matter in earlier pleadings, and the injustice resulting to the party opposing the motion should it be granted.

Appellant has demonstrated no hardship or prejudice arising from the granting of leave and amendment of the pleadings substituting Michael Lee Griffin as plaintiff. The nature and essence of the claim did not change after substitution of the proper plaintiff. Further, appellant was not prejudiced in his efforts to defend the lawsuit. Conversely, respondent's claim would have been lost if substitution were not allowed. Finally, the suggestion of the proper party to which the claim passed and the action taken in opening the estate was suggested to the court and all parties as part of the second motion for substitution. The action of the trial court in granting leave to open the estate of Paul Griffin in order for the substitution of the proper plaintiff will not be disturbed.

While this court does not endorse respondent's *modus operandi* for substitution of the proper plaintiff pursuant to Rule 52.13, upon review of all evidence in the light most favorable to respondent and providing him the benefit of all reasonable inferences, it is apparent that the substitution of Michael Griffin as Personal Representative of the Estate of Paul Griffin was within the law and that the court did have jurisdiction to hear the case. Point denied.

### III. *SUFFICIENCY OF THE EVIDENCE*

Appellant contends that there was insufficient evidence to establish that a statutory joint tenancy with right of survivorship pursuant to section 362.470.1, RSMo 1986, existed in the bank account in question. The Missouri Supreme Court expanded the interpretation of this statute in *Maudlin v. Lang,* 867 S.W.2d 514, 516 (Mo. banc 1993), finding that a joint tenancy in a bank account can be established in any of three ways:

1) describing the named persons as "joint tenants;"

2) making the deposit "in form to be paid to any one or more of [the named persons];" or

3) making the deposit "in form to be paid to ... the survivor or survivors."

*Maudlin* involved a dispute over four different bank accounts, one of which was a checking account. The checking account listed the decedent and her niece, respondent Lang, as owners of the account. The account agreement was silent as to whether the account was individual, joint, corporate, or any other type. Both the decedent and Lang signed the account documents as owners of the account. On the reverse side of the account agreement appeared the following paragraph:

WITHDRAWALS—Any one of you who signs on the reverse side may withdraw or transfer all or any part of the account balance at any time on forms approved by us. ...

The Court found that this language empowered both the decedent and her niece to withdraw funds from the account and, in the absence of express language to the contrary, made the deposits "in the form to be paid to any one or more of them" pursuant to § 362.470.1, thereby creating a joint tenancy. *Id.* at 517. Lang was found to be entitled to the proceeds of the account as a joint tenant.

The account agreement card from the Trenton National Mercantile Bank for the account in question is part of the record before this court. Like the account agreement in *Maudlin,* it is silent as to the type of account the parties intended, as none of the blocks identifying the different account types are checked. Both Helen Ervin and Paul Griffin were named on the account and provided authorized signatures for the account. On the reverse side of the account agreement card appears the following paragraph:

WITHDRAWALS—GENERALLY—Withdrawals may be made by written order (check) or withdrawal slip, on forms approved by us, *signed by the persons designated in this agreement.*

Though the language is not identical to that from the account in *Maudlin,* it clearly contemplates that either party whose name was on the title of the account and provided an authorized signature could withdraw funds from the account. Accordingly, because there is no express language to the contrary, all deposits were "in the form to be paid to any one or more of them." The account satisfied the criteria for the existence of a joint tenancy set forth in § 362.470.1, RSMo 1986.

Additionally, there is testimony from the bank president that the signature card signed by Helen Ervin and Paul Griffin was for a joint account with a right of survivorship agreement and that the bank treated the account in question as such. Finally, it is noted that the funds in the account prior to the deposit of the Edward D. Jones check in the amount of $20,600.00 are not being held in escrow pending the outcome of this litigation. While neither party has provided the court with an explanation of the disposition of these funds, if appellant truly questions the nature of the account at issue, these funds should also be included in this litigation.

Viewing the evidence presented in the light most favorable to the verdict and providing respondents with all reasonable inferences therefrom, it is clear that there was sufficient evidence to support the jury's finding that a joint tenancy with right of survivorship existed between Paul Griffin and Helen Ervin in the bank account in question. Appellant's arguments to the contrary are without merit.

The trial court's denial of appellant's motion for judgment notwithstanding the verdict and new trial is affirmed.

All concur.